UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

In Re:                                    )    Case No. 10-14407
                                          )
Gary R. McLean,                           )
                                          )    UNITED STATES TRUSTEE'S
                                          )    MOTION FOR DISGORGEMENT OF
                             Debtor.       )    ATTORNEY'S FEES
                                          )
                                          )
_____ )

        The United States Trustee hereby requests that the Court exercise its inherent authority

to order Lasher Hozapfel Sperry & Ebberson ("Lasher") to disgorge approximately $369,000 in

fees received for services rendered to Gary R. McLean (the "Debtor") during the above-

captioned chapter 11 case (the "Case" and the "Motion").[1]  The United States Trustee asserts that

the relief sought is necessary and appropriate because Lasher perpetrated a fraud on the Court,

failed in its duty of candor to the Court, and violated fiduciary duties to the bankruptcy estate

and creditors, in conjunction with improperly obtaining dismissal of the Case.  The declarations

of Martin L. Smith (the "Smith Decl.") and Jerry R. Kimball (the "Kimball Decl.") in support of

the Motion are being filed concurrently herewith.

---

[1] The United States Trustee asserts that some of the actions described herein also violate Bankruptcy Rule 9011(b).  However, because the safe harbor required by Bankruptcy Rule 9011(c)(1)(A) cannot be provided to Lasher at this point under the unusual procedural posture of the reopened chapter 11 case, the United States Trustee is not seeking sanctions for violation of Bankruptcy Rule 9011.  The Court, of course, has the ability to impose sanctions under Rule 9011(c)(1)(B) without the need for a safe harbor.

UNITED STATES TRUSTEE'S MOTION FOR DISGORGEMENT
OF ATTORNEY'S FEES - 1

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

# I. OVERVIEW

As discussed below, Lasher and its attorneys perpetrated a fraud on this Court and on parties in interest. The firm intentionally withheld critical material facts from the Court and creditors; knowingly filed an inaccurate pleading; and fraudulently and in bad faith obtained dismissal of the Case under false pretenses for an improper purpose. Specifically, Lasher moved to dismiss the Case based on the Debtor's alleged lack of financial resources. However, during the time leading up to the hearing on the dismissal motion, Lasher became aware that the Debtor would receive approximately $2.2 million in a matter of weeks from a sale of the assets of a related entity, Graphic Sciences, Inc. ("Graphic Sciences"), and the transactions relating to that sale. The $2.2 million should have become property of the estate, available to pay creditors. By concealing the Debtor's imminent windfall and underlying transactions, Lasher obtained settlements with the Debtor's two largest secured creditors which included withdrawal of their objections to dismissal of the case. Lasher also hid the Debtor's imminent change of financial circumstances from the Court both in a reply pleading filed prior to the hearing on dismissal and by not informing the Court at the dismissal hearing -- even though the Graphic Sciences sale was already scheduled to close within two weeks of that hearing. Lasher willfully disregarded its duty of candor to the Court and, worse, actively engaged in misrepresentation and deceit in order to obtain dismissal of the Case and allow the Debtor, rather than his creditors, to benefit from the $2.2 million in proceeds related to the asset sale.

The extent of Lasher's conspiracy with the Debtor is evidenced by events subsequent to the dismissal hearing. The $2.2 million was received by Lasher on the Debtor's behalf just 12 days after the Case was dismissed (and while the Case was still open). Within two days of receipt, Lasher acted in concert with the Debtor to disseminate the funds by transferring almost $221,000 to itself, $800,000 to the Debtor's girlfriend, and another $800,000 to various entities owned or controlled by the Debtor. The Graphic Sciences transactions, and receipt and use of the money, only came to the attention of the United States Trustee last year when one of the Debtor's defrauded creditors filed a lawsuit detailing the scheme. Under the circumstances,

UNITED STATES TRUSTEE'S MOTION FOR DISGORGEMENT
OF ATTORNEY'S FEES - 2

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

the Court's invocation of its inherent authority to require Lasher to disgorge fees received from the Debtor relating to the Case in an amount not less than $369,000 is appropriate and warranted.

## II.    FACTS[2]

A.    Background.

The Case was filed on April 20, 2010 (the "Petition Date"). In his Schedules of Assets and Liabilities filed on May 4, 2014 (collectively, the "Schedules" and each a "Schedule"), the Debtor lists assets of just over $30 million, and debts of almost $20 million. ECF document no. 13. The value of the Debtor's interest in Graphic Sciences is listed on Schedule B as "unknown." The Schedules do not list any receivables owing to the Debtor from Graphic Sciences.

The majority of the asset value on the Schedules, approximately $26 million, is attributed to the Debtor's stock in Interstate Distributor Company ("IDC"). IDC was listed in the Debtor's amended Schedule D as having a secured claim of $2.6 million, although IDC filed several proofs of claim that totaled substantially more. *See* proofs of claim nos. 12-1, 13-1, 14-1 and 14-2, 15-1, 16-1, 17-1 and 17-2, 18-1, 19-1, 20-1, 21-1, 22-1, and 25-1. Amended Schedule D is part of ECF document no. 54.

In addition to IDC, the other primary creditor in the Case was the Debtor's former spouse, Kathleen McLean ("Ms. McLean"). During the course of the Case, Ms. McLean was represented by Alan Wenokur ("Wenokur") and Jerry Kimball ("Kimball"). The Debtor listed Ms. McLean in amended Schedule D, ECF document no. 54, with secured claims totaling $11 million. Ms. McLean filed a proof of claim, no. 11-1, in the amount of $11,434,728.

The Case was filed primarily because of prepetition actions by IDC and Ms. McLean. *See* Ex Parte Application for Order Authorizing Employment of Special Counsel for Debtor at ECF no. 63. The Debtor's amended Schedule F, part of ECF document no. 54, lists total

---

[2] A timeline of many of the important dates in the Case that are relevant to the Motion is attached to the Smith Decl. as **Exhibit 1**.

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

unsecured claims of $60,484 – including $17,000 owed to the Debtor's self-described "girlfriend" Marie Durflinger ("Ms. Durflinger").

### 1. The Debtor's Employment of Counsel.

Lasher was employed as the Debtor's general bankruptcy counsel. The primary Lasher attorneys providing services to the Debtor were partner Kevin Hanchett ("Hanchett"), and associates Timothy Steen ("Steen") and Jeffrey Smoot ("Smoot"). The Lasher employment application, declaration of Hanchett, and Order employing Lasher are ECF documents no. 63, 64, and 69, respectively.

The Debtor also hired Vandeberg, Johnson & Gandara, LLP ("Vandeberg") solely to represent him regarding issues with IDC. Darren Nitz ("Nitz") was the primary attorney at Vandeberg who provided services to the Debtor. The Vandeberg employment application, declaration of Nitz, and Order employing Vandeberg are ECF documents no. 27, 28, and 31, respectively. Vandeberg was never authorized to represent the Debtor for any purpose other than shareholder issues relating to IDC.

### 2. Lasher's Motion to Dismiss.

Lasher filed a motion to dismiss the Case on July 11, 2011 (the "Dismissal Motion"). ECF document no. 372. The Dismissal Motion described the history of the postpetition sale of the Debtor's IDC stock by Ms. McLean for less than the Debtor anticipated, and concluded that because of the loss of that asset "[t]he Debtor no longer has sufficient assets to be able to propose a feasible plan of reorganization." Dismissal Motion, p. 3, ¶ 6. Lasher also stated, in paragraph 9 of the Dismissal Motion, that the Debtor's secured creditors "will not be prejudiced by dismissal of the case."

Ms. McLean filed an objection to the Dismissal Motion on July 29, 2011. ECF document no. 377. In her objection, Ms. McLean strenuously argued that conversion, not dismissal, was in the best interest of creditors so that a trustee could liquidate the Debtor's assets. As part of her argument, Ms. McLean recited what she believed to be the Debtor's

UNITED STATES TRUSTEE'S MOTION FOR DISGORGEMENT
OF ATTORNEY'S FEES - 4

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

Case 10-14407-MLB    Doc 450    Filed 06/24/16    Ent. 06/24/16 10:26:39    Pg. 4 of 24

potentially most valuable remaining assets. The Debtor's interest in Graphic Sciences was conspicuously missing from that list – presumably because Lasher concealed the asset sale, which it knew was being actively negotiated at the time, from Wenokur and Kimball.[3]

IDC filed a response to the Dismissal Motion on September 2, 2011. ECF document no. 386. The IDC response informed the Court that settlement negotiations with the Debtor were ongoing, and that if they were successful then IDC would support the Dismissal Motion, but if the negotiations were not successful then IDC joins in Ms. McLean's objection requesting conversion of the Case to chapter 7.

On September 6, 2011, Lasher filed a reply to Ms. McLean's objection to the Dismissal Motion (the "Dismissal Reply"). ECF document no. 387. The Dismissal Reply relied on some of the same arguments that were in the Dismissal Motion, *i.e.* that IDC and Ms. McLean would not be prejudiced by dismissal because they held liens on all of the estate's assets and they could pursue their state law rights and remedies. Critically, the Dismissal Reply contains no mention of the impending Graphic Sciences transactions and the anticipated $2.2 million windfall to the Debtor.

The initial hearing on the Dismissal Motion was set for August 5, 2011, but was continued several times. Eventually, a hearing was held on September 23, 2011. Smoot appeared for Lasher at the hearing on the Debtor's behalf. Smoot informed the Court that all of the objections had been withdrawn.[4] The Court indicated that it would grant the Dismissal Motion, but inquired about why the objections were withdrawn and asked if it was because the parties had worked out something on the remaining assets. In response, Smoot represented to the Court that the parties had been working on a settlement agreement for eight weeks, and that it

---

[3] As discussed in section II.B. hereof, the Debtor signed a letter of intent for the Graphic Sciences sale 9 days prior to Ms. McLean's objection. The other reasons why Ms. McLean did not believe that there was much, if any, value in the Debtor's interest in Graphic Sciences is detailed in the Kimball Decl., ¶¶ 9 through 14.

[4] The objections were withdrawn the day before the hearing, as reflected in ECF docket nos. 388 and 389.

UNITED STATES TRUSTEE'S MOTION FOR DISGORGEMENT
OF ATTORNEY'S FEES - 5

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

had just been finalized the day before.[5]  However, it is what Smoot did <u>not</u> say that is important. As with the Dismissal Reply, Lasher, through Smoot, once again withheld from the Court the fact that if the Case remained in bankruptcy the estate would receive $2.2 million in unencumbered funds <u>in 12 days</u>.  The Court indicated that it was glad everything was resolved and concluded the hearing.  The transcript of the hearing is at ECF docket no. 446.  The Court entered the Order granting the Dismissal Motion the same day as the hearing.  ECF document no. 391.  The Case was closed on October 14, 2011.

       3.    <u>Lasher and Vandeberg Fee Applications</u>.

Lasher and Vandeberg each filed applications for interim compensation in December, 2010 (together, the "Fee Applications").  ECF documents nos. 213 and 217, respectively.  IDC and Ms. McLean each objected to both Fee Applications, but the applications were ultimately approved by entry of an Agreed Order Approving First Applications for Interim Compensation and Reimbursement of Expenses of Professionals (the "Fee Order").  ECF document no. 232. The Fee Order approved Lasher's fees in the amount of $192,203.74 for services from the Petition Date to September 30, 2010.  At the time the Fee Order was entered, Lasher apparently held a $62,530 retainer, which it applied to its allowed fees on December 15, 2010.  On or about December 30, 2010, the Debtor paid Lasher another $84,209.  *See* Smith Decl., **Exhibit 3**.  The Fee Order also approved fees for Vandeberg of $32,512 for services from the Petition Date to October 31, 2010.  Vandeberg was paid $32,410.50 sometime in August 2011.[6]

B.    <u>Sale of Graphic Sciences</u>.

The Debtor owned 50% of Graphic Sciences, and the other 50% was owned by the Debtor's business partner Kent Wishart ("Wishart"), who was incarcerated at the times relevant

---

[5]  A copy of the Settlement Agreement and Release between the Debtor, Ms. McLean, IDC and Saltchuk Resources, Inc. (the "Creditor Settlement Agreement") is attached to the Smith Decl. as **Exhibit 2**.

[6]  Payment is reflected on Vandeberg's billing statement dated August 31, 2011, a copy of which is attached to the Smith Decl. as part of **Exhibit 4**.

UNITED STATES TRUSTEE'S MOTION FOR DISGORGEMENT
OF ATTORNEY'S FEES - 6

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

hereto.  The Debtor scheduled his interest in Graphic Sciences as having an "unknown" value. ECF document no. 13.

Graphic Sciences received a letter of intent dated June 9, 2011, from Mosley Holdings, Inc. (the "Purchaser") for the purchase of all of its assets for a price of $3.75 million plus assumption of certain liabilities (the "Initial LOI").  A copy of the Initial LOI is attached to the Smith Decl. as **Exhibit 5**.

On July 20, 2011, shortly after the Dismissal Motion was filed, the Debtor received a second letter of intent from the Purchaser reflecting a purchase price of $2.7 million in cash plus certain additional consideration (the "Second LOI").  The Debtor signed the Second LOI on July 20, 2011, and Wishart signed it on August 1, 2011.  A copy of the Second LOI is attached to the Smith Decl. at **Exhibit 6**.

Graphic Sciences announced the asset sale in a Memorandum from President Jeff Ashburn to certain employees of the company on August 4, 2011 (the "Memorandum").   The Memorandum states on its first page:  "The purpose of this message is to inform each of you that Graphic Sciences' ownership has signed a Letter of Intent to sell substantially all of its assets to Mosley Holdings."  A copy of the Memorandum is attached to the Smith Decl. as **Exhibit 7**.

At some point after the Second LOI was executed, drafts of Asset Purchase Agreements were circulated among the parties to the transaction.  For example, a copy of a draft Asset Purchase Agreement from August, 2011 (the "Draft Purchase Agreement") produced from Lasher's files is attached to the Smith Decl. as **Exhibit 8**.   It is clear from an email dated August 17, 2011, from Vandeberg attorney Nitz that the Draft Purchase Agreement was at least the second version of the document.  In that email, Nitz requests certain revisions to the previous form of the Asset Purchase Agreement already reflected in the Draft Purchase Agreement.  Nitz's changes included a reduction in the purchase price from $2.7 million to $1.85 million, and the addition of a non-compete agreement for the Debtor.  A copy of the August 17, 2011, email from Nitz is attached to the Smith Decl. as **Exhibit 9**.

UNITED STATES TRUSTEE'S MOTION FOR DISGORGEMENT
OF ATTORNEY'S FEES - 7

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

Case 10-14407-MLB    Doc 450    Filed 06/24/16    Ent. 06/24/16 10:26:39    Pg. 7 of 24

A final Asset Purchase Agreement, dated September 21, 2011, was ultimately executed (the "Final Purchase Agreement"). A copy of the Final Purchase Agreement is attached to the Smith Decl. as **Exhibit 10**. Pursuant to the Final Purchase Agreement, the Graphic Sciences asset sale closed on October 4, 2011.

As required by the terms of the Final Purchase Agreement, the Debtor also signed a Non-Compete Agreement (the "Non-Compete") which, among other things, required the Purchaser to pay the Debtor $890,000. A copy of the Non-Compete is included with the Final Purchase Agreement as **Exhibit 10**. Ultimately, Graphic Sciences directed that $1,306,544 of the sale proceeds should be paid to the Debtor as repayment of amounts he purportedly loaned to Graphic Sciences.[7] Therefore, as a direct result of the sale of the Graphic Sciences assets, funds totaling approximately $2.2 million were wired <u>to Lasher</u> on the Debtor's behalf on October 4, 2011. An email dated September 29, 2011, from Nitz directing the Purchaser to wire $2,196,544 to Lasher is attached to the Smith Decl. as **Exhibit 11**.[8] Lasher attorney Hanchett was copied on the email.

C.     <u>Lasher's Knowledge of Sale of Graphic Sciences.</u>

Lasher became aware of the potential sale of Graphic Sciences no later than July 25, 2011, when Vandeberg attorney Nitz and Lasher attorney Steen had a long telephone call about the matter. Lasher's July 25, 2011, time records contain the following entry for Steen: "Voice mail, correspondence, and teleconference with Mr. Nitz regarding potential sale transaction of

---

[7] As previously noted, the Debtor, represented by Lasher, did not at any time disclose any amounts owed to him by Graphic Sciences in his Schedules.

[8] Nitz and the Vandeberg firm had been hired in May 2010 to represent the Debtor solely with regard to IDC issues as reflected in ECF documents no. 27, 28, and 31. They were subsequently hired in August 2011, <u>by Graphic Sciences</u> to represent it in the sale to the Purchaser. A copy of the engagement letter with Graphic Sciences dated August 10, 2011, is attached to the Smith Decl. as **Exhibit 12**. Interestingly, notwithstanding the engagement by Graphic Sciences and the lack of authorization to represent the Debtor regarding the matter, paragraph 13.11 of the Final Purchase Agreement expressly states that Vandeberg "has acted as counsel for <u>Gary McLean</u>, and is not counsel to any other party." (Emphasis added). That provision in the Final Purchase Agreement was actually requested by Nitz, as reflected in the email attached to the Smith Decl. as **Exhibit 9**.

UNITED STATES TRUSTEE'S MOTION FOR DISGORGEMENT
OF ATTORNEY'S FEES - 8

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

Case 10-14407-MLB     Doc 450     Filed 06/24/16     Ent. 06/24/16 10:26:39     Pg. 8 of 24

Mr. McLean's interests in Graphic Sciences and potential credits, debits in transaction and relation to bankruptcy process. (.8) Research Mr. McLean's debts associated with Graphic Sciences, review file and confer with counsel regarding same and dismissal (1.7)." A copy of Lasher's time records for services in the Case between June 9, 2011 (when the Initial LOI was signed) and September 30, 2011 (the last time records produced) (the "Lasher Time Records"), is attached to the Smith Decl. as **Exhibit 13**.

Hanchett testified that he first became aware of the potential sale from Steen, probably sometime in August 2011. *See* excerpts from the transcript of Hanchett's Bankruptcy Rule 2004 examination held on November 24, 2015 (the "Hanchett Exam Transcript"), p. 22, ll.15-22, attached to the Smith Decl. as **Exhibit 14**. Hanchett then had subsequent discussions with Nitz about the sale, also in August, 2011. *Id.* at p. 21, ll. 16-23. The Lasher and Vandeberg[9] time records shed some light on what was going on within the firms relating to the Graphic Science sale:

| Date | Description of Services |
|------|------|
| 7/11/11 | "Review Mosley Holdings letter of intent and due diligence materials; prepare for and attend meeting with G. McLean regarding same." (2.5) [Vandeberg time records]; |
| 7/13/11 | "Prepare for and attend meeting with G. McLean regarding status." (.3); [Vandeberg time records]; |
| 7/21/11 | "Prepare for and attend meeting with [Purchaser] and G. McLean regarding proposed asset purchase; revise and circulate letter of intent." (1.8) [Vandeberg time records]; |
| 7/26/11 | "Research estates [sic] interests in Graphic Sciences and debts owing related to same (1.8)" [Lasher time records]; |

---

[9] The applicable Vandeberg time records (the "Vandeberg Time Records") are attached to the Smith Decl. as **Exhibit 15**. The invoices cover the period July 11, 2011, through October 3, 2011 and purport to be for services as outside counsel to Graphic Sciences. However, as reflected in **Exhibit 12** to the Smith Decl., Vandeberg was not employed by Graphic Sciences until August 10, 2011. Apparently Vandeberg was paid $6,286.82 by an unknown party for these services in October 2011 according to the invoices.

UNITED STATES TRUSTEE'S MOTION FOR DISGORGEMENT OF ATTORNEY'S FEES - 9

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

Case 10-14407-MLB    Doc 450    Filed 06/24/16    Ent. 06/24/16 10:26:39    Pg. 9 of 24

| | | |
|---|---|---|
| 8/10/11 | "Review and comment on asset purchase agreement; review and respond to correspondence regarding same; discuss same with G. McLean." (1.2) [Vandeberg time records]; |
| 8/17/11 | "Revise and circulate asset purchase agreement; discuss same with G. McLean." (1.2) [Vandeberg time records]; |
| 8/18/11 | "Prepare for and attend meeting with G. McLean; revise and circulate asset purchase agreement; prepare and circulate use of proceeds worksheet; draft non-compete agreements." (3.8) [Vandeberg time records]; |
| 8/18/11 | "Conference with Gary [McLean] and Daren [Nitz] re status of dismissal. (1.5)" [Lasher time records]; |
| 8/21/11 | "Revise and circulate draft non-compete agreements; revise purchase agreement; draft correspondence regarding structure and escrow agreement." (.8) [Vandeberg time records]; |
| 8/24/11 | "Prepare for and attend call with T. Drake, counsel for [Purchaser]; revise and circulate documents; review and comment on revised purchase agreement and draft escrow agreement." (.7) [Vandeberg time records]; |
| 8/25/11 | "Discuss transaction with T. Drake and G. McLean; review and comment on release." (.5) [Vandeberg time records]; |
| 8/29/11 | "Review and comment on financial statement summaries; [rest of description redacted]" (1.10) [Vandeberg time records];[10] |
| 8/31/11 | "Analyze IDC claims regarding Graphic Science debt and voicemail to Mr. Nitz regarding same. (.5)" [Lasher time records]; |
| 9/1/11 | "Review and comment on release; review ancillary agreements." (.3) [Vandeberg time records]; |
| 9/15/11 | "Revise and circulate non-compete agreements; discuss same with T. Drake." (.8) [Vandeberg time records]; |

---

[10] Also on August 29, 2011, Nitz sent an email to the Debtor about the Graphic Sciences sale reflecting a possible distribution of the sale proceeds to the Debtor of $1,786,544, including $896,544 for a net note repayment and $890,000 for a non-compete. Importantly, the email was copied to Hanchett at Lasher. A copy of the email is attached to the Smith Decl. as **Exhibit 16**.

UNITED STATES TRUSTEE'S MOTION FOR DISGORGEMENT
OF ATTORNEY'S FEES - 10

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

Case 10-14407-MLB    Doc 450    Filed 06/24/16    Ent. 06/24/16 10:26:39    Pg. 10 of 24

| | | |
|---|---|---|
| 1 | 9/16/11 | "Prepare and circulate indemnification agreement; review and respond to |
| 2 | | comments regarding transaction documents." (.4) [Vandeberg time records]; |
| 3 | | |
| | 9/19/11 | "Review and comment on revised note; review releases." (.4) [Vandeberg |
| 4 | | time records]; |
| 5 | 9/29/11 | "Prepare for and attend meeting with G. McLean and K. Hanchett; finalize |
| 6 | | ancillary agreements." (2.5) [Vandeberg time records]; and |
| 7 | 9/29/11 | "Meeting with Gary [McLean] and Daren [Nitz] re plan moving forward. (1.5)" [Lasher time records]. |

The billing records and other documents plainly indicate that during July, August, and September 2011, both Lasher and Vandeberg were actively engaged in advising the Debtor and others regarding the Graphic Sciences asset sale. Lasher cannot credibly deny that it was aware of the Graphic Sciences sale and related transactions prior to the hearing on the Dismissal Motion.

D.    The Debtor's Use of the Graphic Sciences Proceeds. [11]

Lasher received $2.2 million on October 4, 2011, 12 days after the Dismissal Motion hearing and while the Case was still open. On October 6 and 7, 2011, Lasher transferred most of those funds as follows:

- $220,696 to Lasher for legal services provided during the Case between October 1, 2010, and September 30, 2011, for which Lasher did not obtain approval from the Court; [12]

- $34,593 to Vandeberg for services during the Case between November 1, 2010, and July 31, 2011;

---

[11] A copy of a document titled Graphic Sciences Transaction Proceeds Summary, produced by Lasher (the "Transaction Summary"), is attached to the Smith Decl. as **Exhibit 17**.

[12] On or about December 27, 2011, Lasher also applied $1,842.40 of funds it was holding to pay itself for expenses or services to the Debtor. *See* the Transaction Summary attached to the Smith Decl. as **Exhibit 17**. Between the $146,739 Lasher was paid in December 2010 pursuant to the Fee Order, and the funds paid in October and December 2011, Lasher has received at least $369,277 for services to the Debtor from the Petition Date through September 2011. The amount, if any, paid by the Debtor to Lasher for services after September 2011 is unknown.

UNITED STATES TRUSTEE'S MOTION FOR DISGORGEMENT
OF ATTORNEY'S FEES - 11

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

- $800,000 to Ms. Durflinger, the Debtor's self-described "girlfriend" who was listed on the Debtor's amended Schedule F as having a claim for $17,000;

- $400,000 to GMMD Consulting, LLC, whose only two members are the Debtor and Ms. Durflinger;

- $100,000 to GMMD Holdings, LLC, another entity whose only two members are the Debtor and Ms. Durflinger;

- $300,000 to Longhaul, LLC, an entity formed to hold a yacht, and whose two members are the Debtor and an individual named Manfred Scharmach; and

- $50,000 to Vine & Sun, LLC, a winery that the Debtor is one of five members of.

Lasher distributed another approximately $292,000 of the Graphic Sciences funds after the Case was closed, including: $200,000 to GMMD Holdings, LLC on January 24, 2012; $36,000 to Vine & Sun, LLC on March 14, 2012; and $56,065 to GMMD Consulting, LLC on July 6, 2012. *See* Transaction Summary.

According to the Debtor, much of the money Lasher originally sent to his companies was ultimately re-routed and used by him to pay his own bills. For example, when asked at his Rule 2004 examination what happened to the $200,000 sent to GMMD Holdings, LLC in January 2012, the Debtor testified: "I took it back to pay bills." *See* excerpts from the transcript of the Debtor's Bankruptcy Rule 2004 examination held on December 3, 2015 (the "Debtor's Exam Transcript"), p.43, ll.15-16. The Debtor similarly testified that the $400,000 sent to GMMC Consulting, LLC and the $100,000 sent to GMMC Holdings, LLC in October 2011 was used to pay bills. *Id.* at pp. 38, ll.8-25; p. 39, ll. 1-9; p. 49, ll. 21-23. Finally, he testified that as to the $300,000 sent to Longhaul, LLC, he "took some of it back" although he could not remember how much. *Id.* at p.40, ll.8-25; p. 41, ll. 1-23. A copy of the Debtor's Exam Transcript is attached to the Smith Decl. as **Exhibit 18**.

E.    Lasher's Lack of Disclosure of the Graphic Sciences Transactions to Creditors.

Lasher, and specifically Hanchett, negotiated with IDC and Ms. McLean over the course of several weeks to resolve their objections to the Dismissal Motion during the time between the

UNITED STATES TRUSTEE'S MOTION FOR DISGORGEMENT
OF ATTORNEY'S FEES - 12

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

filing of, and hearing on, the motion. Ultimately, the parties settled and the objections to dismissal were withdrawn the day before the hearing. Kimball Decl., ¶¶ 19, 20.

Lasher's own records reflect that its attorneys were actively engaged in the Graphic Sciences deal during the negotiations. Despite that, Hanchett never advised Wenokur or Kimball of the imminent transactions that were to result in the Debtor receiving $2.2 million. Kimball Decl., ¶ 20. Lasher's concealment of the Graphic Sciences asset sale and related transactions, and the disposition of the funds from the transactions, continued for years. Kimball Decl., ¶¶ 21-23.

Lasher's motivation for concealing the Graphic Sciences transactions is apparent: rather than the $2.2 million becoming property of the estate and subject to the claims of the Debtor's creditors (particularly the large claims of IDC and Ms. McLean), the Debtor obtained the full benefit of the transaction proceeds, and Lasher received $220,000 towards its fees without exposing its fees to the objections of creditors by following the process of obtaining approval from the Court. Through their active concealment of the Graphic Sciences transaction, the Debtor and Lasher benefited tremendously, while the estate's creditors received nothing from the sale and were thereby severely prejudiced.

A series of emails between Lasher's Hanchett and Ms. McLean's counsel Wenokur and Kimball in the two weeks following Lasher's receipt of the Debtor's $2.2 million demonstrates the extent of Hanchett's active concealment of the Graphic Sciences sale (collectively, the "Post-Dismissal Emails"). The Post-Dismissal Emails are attached to the Smith Decl. as **Exhibit 19**. In the emails, Hanchett initially informed Wenokur that there was an offer to purchase an asset (unrelated to Graphic Sciences) of the Debtor for $200,000. Hanchett sought Ms. McLean's consent to the transaction because of her lien on the asset. Hanchett also asked that the proceeds of the sale of that asset be divided evenly between the Debtor and Ms. McLean. Wenokur questioned why the Debtor should receive any of the proceeds given Ms. McLean's lien, and Hanchett responded on October 18, 2011: "Gary needs some money to live on as he works to find a new job." Wenokur then made a counteroffer for the Debtor to receive $5,000, and

UNITED STATES TRUSTEE'S MOTION FOR DISGORGEMENT
OF ATTORNEY'S FEES - 13

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

Case 10-14407-MLB    Doc 450    Filed 06/24/16    Ent. 06/24/16 10:26:39    Pg. 13 of 24

Hanchett replied:  "But the reality is that Gary is trying to survive and is trying to find a job and needs some help in this regard.  Would Kathy agree to allow Gary to keep $50,000?"  Based on Hanchett's representations, Ms. McLean agreed to allow the Debtor to retain 20% of the proceeds, not to exceed $40,000.  Ultimately, the Debtor received almost $39,000 from the asset's sale.  Kimball Decl., ¶ 21.  Hanchett's representations about the Debtor's financial circumstances were knowingly and completely false.  As shown by the Transaction Summary attached to the Smith Decl. as **Exhibit 17**, at the time Hanchett advised Wenokur that the Debtor needed financial help and was "trying to survive" Lasher still held $274,865 of the Graphic Sciences sale proceeds for the Debtor, in addition to the $1.65 million that Lasher already disseminated to Ms. Durflinger and various entities owned or controlled by the Debtor.  Hanchett's affirmative false representations to Wenokur are further evidence of the intentional deception and concealment he and Lasher engaged in to defraud the Court and creditors.

F.     Lasher's Lack of Disclosure of Sale of Graphic Sciences to the Court.

Lasher first became aware of the potential sale of Graphic Sciences' assets no later than July 25, 2011.  It was on that date, according to Lasher's time records, that Nitz called and spoke with Lasher's Steen about the matter -- five days after the Debtor signed the Second LOI, and 60 days before the Dismissal Motion hearing.

In August, 2011, Lasher apparently received at least one draft of the Purchase Agreement to review.  Further, Hanchett met with Nitz and the Debtor for 1.5 hours on August 18, 2011; Nitz's only work for the Debtor or Graphic Sciences during that time period was related to the Graphic Sciences deal, for which Graphic Sciences had formally engaged Nitz's on August 10.  In addition, Hanchett knew from Nitz's August 29, 2011, email, which Hanchett was copied on, that the Debtor could expect to receive almost $1.8 million (eventually $2.2 million) from the pending Graphic Sciences transactions.  The Final Purchase Agreement, which called for a closing date of October 4, 2011, was signed two days before the Dismissal Motion hearing.

Despite having substantial knowledge of the Debtor's imminent windfall, Lasher never informed the Court of the Graphic Sciences transactions.  Rather, Lasher, by failing to disclose

UNITED STATES TRUSTEE'S MOTION FOR DISGORGEMENT
OF ATTORNEY'S FEES - 14

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

Case 10-14407-MLB    Doc 450    Filed 06/24/16    Ent. 06/24/16 10:26:39    Pg. 14 of 24

the Graphic Sciences sale in the Dismissal Reply and by failing to correct its previous statements regarding the Debtor's supposedly dire financial condition and inability to reorganize, chose to affirmatively mislead the Court. The Dismissal Reply also falsely represented that IDC and Ms. McLean would not be prejudiced by dismissal – a representation that Lasher knew was untrue given it's active participation in the ongoing scheme to receive and disburse the Debtor's $2.2 million from the Graphic Sciences transactions to itself, the Debtor, and the Debtor's insiders.

When Hanchett was asked at his examination why the Court was not told about the sale in the Dismissal Reply, he gave two reasons: 1) that the sale "continued to be a potential for recovery, but it was not a certainty;" and 2) the asset (i.e. the Debtor's 50% interest in Graphic Sciences) had been disclosed, and a deal had already been struck with Ms. McLean and IDC. Hanchett Exam Transcript, attached to the Smith Dec. as **Exhibit 14**, p. 43, ll.14-25; p. 44, ll. 1-25; p. 45, ll. 1-25; and p. 46, ll. 1-20. Both arguments are absurd.

Firstly, the position that the Court and parties in interest need only be informed of transactions which will substantially impact the estate and administration of the case once they become a certainty goes against the basic principles of transparency and fair play underlying the bankruptcy system. Further, this position goes against the facts at issue here; by the time of the hearing on the Dismissal Motion, the Final Purchase Agreement had been signed and a closing date scheduled.

Hanchett's second rationale is similarly flawed, because it relies upon the existence of fraudulently obtained settlements to excuse Lasher's omissions and false representations to the Court. The indisputable facts reflect that Lasher actively conspired with the Debtor to perpetrate a fraud on this Court in order to obtain dismissal of the Case.

## I.     ARGUMENT

### A.     Disgorgement Under the Court's Inherent Authority.

A bankruptcy court has the inherent authority to regulate the practice of attorneys who appear before it. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123 (1991); *Haeger v. Goodyear Tire & Rubber Co.*, 813 F.3d 1233, 1243 (9th Cir. 2016); *Price v. Bronitsky (In re*

UNITED STATES TRUSTEE'S MOTION FOR DISGORGEMENT
OF ATTORNEY'S FEES - 15

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

*Lehtinen*, 564 F.3d 1052, 1058 (9th Cir. 2009); *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278, 284-85 (9th Cir. 1996).

Such inherent authority may be used to address "bad faith" or "willful misconduct," even in the absence of express statutory authority to do so. *Lehtinen*, 564 at 1058 (citing *Knupfer v. Lindblade (In re Dyer),* 322 F.3d 1178, 1187 (9th Cir.2003)). Sanctionable acts include those where (1) a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, (2) when a party participates in an abuse of process or other dilatory conduct, or (3) when the court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled." *Chambers,* 501 U.S. at 46–47 (citations omitted); *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278, 284 (9th Cir. 1996). *See also Fink v. Gomez*, 239 F.3d 989, 992-93 (9th Cir. 2001). "There is an irrefragable linkage between the courts' inherent powers and the rarely-encountered problem of fraud on the court. Courts cannot lack the power to defend their integrity against unscrupulous marauders; if that were so, it would place at risk the very fundament of the judicial system." *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1119 (1st Cir. 1989) (appellate court confirmed exercise of inherent authority to dismiss case where there was fraud on the court arising from the filing of a complaint based on a fabricated purchase agreement).

Bankruptcy courts may order total disgorgement of attorney's fees pursuant to their inherent authority over the debtor's attorney's compensation. *Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis)*, 113 F.3d 1040, 1045 (9th Cir. 1997) (disgorgement of fees under inherent authority upheld). A specific finding of bad faith generally must precede any sanction under the court's inherent powers. A finding of bad faith can be appropriate even where the pleadings or actions under scrutiny are not completely frivolous or meritless, if the motivation for them was improper. *In re Itel Securities Litigation*, 791 F.2d 672, 675 (9th Cir. 1986). While recklessness alone is not sufficient, sanctions can be appropriate under inherent powers where the court finds conduct "tantamount to bad faith. Sanctions are available for a variety of types of willful harassment, or an improper purpose. Therefore, we hold that an attorney's

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

reckless misstatements of law and fact, when coupled with an improper purpose, such as an attempt to influence or manipulate proceedings in one case in order to gain tactical advantage in another case, are sanctionable under a court's inherent power." *Fink*, 239 F.3d at 993-94.

Lasher has perpetrated a fraud on the Court by filing at least one intentionally misleading pleading, and otherwise concealing and failing to disclose material information to the Court in a successful fraudulent scheme with the Debtor to get obtain dismissal of the Case so that the Debtor would not have to share his $2.2 million windfall with his creditors. Lasher has also violated the Washington Rules of Professional Conduct by failing in its duty of candor to the Court, and breached its fiduciary duty to the estate and creditors. Under these circumstances, the United States Trustee requests that the Court invoke its inherent authority to order the disgorgement of all fees received by Lasher for services to the Debtor during the Case, which appear to be approximately $369,000. The disgorged fees should be paid into the registry of the Court pending further order.

    1.    <u>The Court Should Use Its Inherent Authority to Order Disgorgement Because Lasher Perpetrated a Fraud on the Court.</u>

Whether there has been a "fraud on the court" typically arises in the context of a motion under Rule 60 of the Federal Rules of Civil Procedure, which governs relief from a judgment or order based on a finding of fraud on the court. *See, e.g., Ehrenberg v. Roussos (In re Roussos)*, 541 B.R. 721 (Bankr. C.D. Cal. 2015) (a 21-year old bankruptcy sale may be set aside for fraud on the court under Rule 60(d)(3)). The Court's inherent power can be invoked even where statutes or rules exist which sanction the same conduct. *Haeger*, 813 F.3d at 1243. Actions constituting a fraud upon the court are sufficient to support a bad faith finding. *Id.* at 1244. The United States Trustee is not seeking relief from a judgment or order, but the case law regarding what constitutes fraud on the court is instructive to the relief sought herein.

In addition to setting aside an order or judgment under Rule 60(b) that is procured by fraud on the court, "it is within the Bankruptcy Court's equitable powers to award a party attorney's fees, order a disgorgement of fees collected, or award costs or other penalties where a

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

party is found to have committed fraud on court." *In re R&R Associates of Hampton*, 248 B.R. 1, *6 (Bankr. D.N.H. 2000) (citing *Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 580, 66 S.Ct. 1176 (1946)). *See also Continental Ill. Nat'l Bank & Trust Co. of Chi. v. Charles N. Wooten, Ltd. (In re Evangeline Ref. Co.),* 890 F.2d 1312, 1323-24 (5th Cir. 1989) (citing *Matter of Futuronics Corp.,* 655 F.2d 463, 471 (2d Cir. 1981)) ("Because fraud on the court and estate is misconduct of the highest order, courts have denied all compensation despite benefits to the estate."); *Denison v. Marina Mile Shipyard, Inc. (In re Denison),* 2012 WL 75768 *5 (S.D. Fla. Jan. 10, 2012) *aff'd* 497 Fed.Appx. 882 (11th Cir. 2012) (a bankruptcy court has the inherent authority to order disgorgement of fees upon a finding of fraud on the court); *In re NWFX, Inc.,* 267 B.R. 118, 221 (Bankr. W.D. Ark. 2001) (trustee's fees of $199,979 ordered disgorged because of fraud on the court by the trustee: "When a trustee misrepresents facts to the Court with knowledge of their falsity, denial of compensation is appropriate.").

"Because corrupt intent knows no stylistic boundaries, fraud on the court can take many forms." *Aoude,* 892 F.2d at 1118. The Ninth Circuit Court of Appeals has articulated fraud on the court as "fraud that defiles the court <u>or is perpetrated by officers of the court</u>. When we conclude that the integrity of the judicial process has been harmed, however, and the fraud rises to the level of 'an unconscionable plan or scheme which is designed to improperly influence the court in its decisions,' we not only can act, we should." *Dixon v. Comm'r*, 316 F.3d 1041, 1046 (9th Cir. 2003) (emphasis added) (quoting *England v. Doyle*, 281 F.2d 304, 309 (9th Cir. 1960)). *Accord U.S. v. Stonehill*, 660 F.3d 415, 444-45 (9th Cir. 2011); *In re Levander*, 180 F.3d 1114, 1119 (9th Cir. 1999); *Gumport v. China Int'l Trust and Inv. Corp. (In re Intermagnetics America, Inc.),* 926 F.2d 912, 916 (9th Cir. 1991). *See also H.K. Porter Co. Inc. v., Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1119 (6th Cir. 1976) (because attorneys are officers of the court, dishonest conduct on their part constitutes fraud on the court).

The inquiry is not focused on prejudice to parties. Instead, it is whether the alleged fraud harms the integrity of the judicial process. *U.S. v. Stonehill*, 660 F.3d at 444. Also, fraud on the court can be established where the acts and omissions evidence "a *pattern* of misconduct clearly

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

aimed at preventing the court from making a fair and well-informed assessment" even where any particular act of misconduct viewed in isolation would not rise to that level. *United Business Communications, Inc. v. Racal-Milgo, Inc.*, 591 F.Supp. 1172, 1187 (D.Kan. 1984) (finding fraud on the court based on party's presentation of false testimony, fabrication, and nondisclosure of relevant information). Fraud must be established by clear and convincing evidence. *England v. Doyle*, 281 F.2d at 310.

Generally, non-disclosure does not, by itself, amount to fraud on the court. *U.S. v. Stonehill*, 660 F.3d at 444 (citing *In re Levander,* 180 F.3d at 1119). However, this general rule is based on the assumption that the parties are aware of the non-disclosure at the time and can therefore challenge it. *Levander*, 180 F.3d at 1120. Non-disclosure constitutes fraud on the court where, as here, the material underlying facts or their non-disclosure could not have been contested at the hearing on dismissal of the Case as a result of Lasher's active concealment. *Id.*

Shortly after the Dismissal Motion was filed, the Debtor signed the Second LOI and, with Lasher's knowledge, began finalizing the sale of Graphic Sciences' assets. The Final Purchase Agreement was dated two days prior to the hearing on the Dismissal Motion. At no time, either in its pleadings relating to the Dismissal Motion or at the hearing, did Lasher inform the Court about the pending sale of assets and related transaction. Instead, Lasher intentionally misled the Court to obtain relief for the Debtor that may not have been granted if the Court was fully informed. For its efforts, Lasher subsequently received over $220,000 in fees from sale-related proceeds that, but for Lasher's concealment, would have entered the estate for proper administration. To compound its wrongful acts, Lasher itself acted in concert with the Debtor to disseminate the remaining sale-related proceeds as part of the scheme to place those funds out of reach of the Debtor's creditors. Lasher then concealed the receipt and use of the $2.2 million for years in its continuing conspiracy with the Debtor to ensure creditors did not receive any of the money.

The United States Trustee has submitted clear and convincing evidence that Lasher has engaged in bad faith actions constituting fraud on the Court through a documented

UNITED STATES TRUSTEE'S MOTION FOR DISGORGEMENT OF ATTORNEY'S FEES - 19

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

"unconscionable plan or scheme which is designed to improperly influence the court in its decision." Under these facts and circumstances, Lasher should be required to disgorge all funds it received in connection with the Case.

2. The Court Should Use Its Inherent Authority to Order Disgorgement Because Lasher Failed in Its Duty of Candor.

As attorneys admitted to practice in the State of Washington, Lasher's attorneys had an obligation to comply with Washington's Rules of Professional Conduct (the "RPC").[13] RPC Rule 3.3 states:

(a) A lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

(2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a … fraudulent act by the client unless such disclosure is prohibited by Rule 1.6;

(3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by the opposing party; or

(4) offer evidence that the lawyer knows to be false.

(b) The duties stated in paragraph (a) continue to the conclusion of the proceeding.

(c) If the lawyer has offered material evidence and comes to know of its falsity, the layer shall promptly disclose this fact to the tribunal unless such disclosure is prohibited by Rule 1.6.

///

///

---

[13] *See* LCR 83.3(a)(2) for the U.S. District Court for the Western District of Washington (to maintain effective administration of justice and the integrity of the court, attorneys shall be familiar with and comply with, among other things, the RPC).

UNITED STATES TRUSTEE'S MOTION FOR DISGORGEMENT
OF ATTORNEY'S FEES - 20

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

Case 10-14407-MLB    Doc 450    Filed 06/24/16    Ent. 06/24/16 10:26:39    Pg. 20 of 24

(d) If the lawyer has offered material evidence and comes to know of its falsity, and disclosure of this fact is prohibited by Rule 1.6, the lawyer shall promptly make reasonable efforts to convince the client to consent to disclosure. If the client refuses to consent to disclosure, the lawyer may seek to withdraw from the representation in accordance with Rule 1.16.

(e) A lawyer may refuse to offer evidence that the lawyer reasonably believes is false.

(f) In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse.

"The general principle that a breach of ethical duties may result in denial or disgorgement of fees is well recognized" and within the inherent power of the trial court. *Eriks v. Denver*, 118 Wash.2d 451, 462-63, 824 P.2d 1207, 1213 (1992) (en banc) (citations omitted). "Disgorgement of fees is a reasonable way to 'discipline specific breaches of professional responsibility, and to deter future misconduct of a similar type.'" *Id.* at 1213 (quoting *In re Eastern Sugar Antitrust Litig.*, 697 F.2d 524, 533 (3d Cir. 1982)).

As the Ninth Circuit has recognized, "With respect to the court's inherent power, … an attorney admitted to a particular bar may be disciplined for conduct that violates that bar's local rules of professional conduct." *U.S. v. Wunsch*, 84 F.3d 1110, 1114 (9th Cir. 1996) (reversing the district court's disqualification of an attorney because the attorney's actions were found to not violate the applicable rules and statutes at issue). *See also Roy Lubit, M.D. v. Chase (In re Chase)*, 372 B.R. 142, 154-55 (Bankr. S.D.N.Y. 2007) (in invoking inherent power to bar recovery of additional fees where attorney violated local rules, ethical rules, and Bankruptcy Rules, the court recognized its broad discretion in fashioning sanctions stating "the punishment should fit the crime.").

Ordering the return of attorneys' fees for breaches of professional responsibility serves two purposes: to discipline the firm for the breach or breaches, and to deter future misconduct of

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

a similar type. *In re Eastern Sugar Antitrust Litig.*, 697 F.2d at 533. With respect to whether fees should be disgorged for services prior to the breach, the court stated:

> We agree that return of fees paid for services rendered before the date of the impropriety may be an appropriate remedy for some ethical violations. Yet, because such a remedy provides the client with a windfall and deprives the attorney of fees earned while acting ethically, we believe such a sanction should be reserved for cases in which the breach of professional ethics is so egregious that the need for attorney discipline and deterrence of future improprieties of that type outweighs the former concerns.

*Id.* (citations omitted).

Here, Lasher's attorneys violated RPC 3.3 in numerous ways, and thereby failed in their duty of candor to the Court. Specifically, at a minimum, Lasher breached RPC's 3.3(a)(1), (2), (4), and (c) when it (i) filed the false and misleading Dismissal Reply; and (ii) failed to either amend its pleadings to disclose the Graphic Sciences asset sale prior to the hearing on dismissal or inform the Court of the sale at the hearing on the Dismissal Motion. The appropriate remedy for Lasher's egregious violation of its duty of candor to the Court is disgorgement of all fees received for services during the Case.

3.    <u>Lasher Violated Its Fiduciary Duty to the Estate and Creditors.</u>

A chapter 11 debtor in possession stands in the shoes of a trustee and is a fiduciary for the estate and its creditors. 11 U.S.C. § 1107(a). *See, e.g., Thompson v. Margen (In re McConville),* 110 F.3d 47, 50 (9th Cir. 1997) (chapter 11 debtors in possession "were fiduciaries of their own estate owing a duty of care and loyalty to the estate's creditors"), *cert. denied,* 522 U.S. 966 (1997); *Woodson v. Fireman's Fund Ins. Co. (In re Woodson),* 839 F.2d 610, 614 (9th Cir. 1988) (as a fiduciary for his creditors, a chapter 11 debtor in possession "is required to turn square corners and avoid conduct that would prejudice the rights of those whose interests he is required to protect.").

Most courts also view an attorney for a debtor in possession as a fiduciary of the bankruptcy estate. *See, e.g., Brown v. Gerdes,* 321 U.S. 178, 182, 64 S.Ct. 487 (1944) ("In all cases persons who seek compensation for services or reimbursement for expenses are held to

UNITED STATES TRUSTEE'S MOTION FOR DISGORGEMENT
OF ATTORNEY'S FEES - 22

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

Case 10-14407-MLB    Doc 450    Filed 06/24/16    Ent. 06/24/16 10:26:39    Pg. 22 of 24

fiduciary standards."); *In re Taxman Clothing Co.,* 49 F.3d 310, 314 (7th Cir. 1995) ("A lawyer hired by a trustee in bankruptcy to do legal work for the estate, like the trustee himself, is a fiduciary of the estate."); *Continental Ill. Nat'l Bank & Trust Co. of Chi. v. Charles N. Wooten, Ltd. (In re Evangeline Ref. Co.),* 890 F.2d 1312, 1323 (5th Cir. 1989) (stating that as officers of the court "trustees and attorneys for trustees are held to high fiduciary standards of conduct"); *Pierson & Gaylen v. Creel & Atwood (In re Consol. Bancshares, Inc.),* 785 F.2d 1249, 1256 n. 7 (5th Cir. 1986) (observing that "court-appointed attorneys are officers of the court and fiduciaries"). *Cf. ICM Notes, Ltd. v. Andrews & Kurth, LLP*, 278 B.R. 117, 126 (S.D. Tex. 2002) *aff'd per curiam,* 324 F.3d 768 (5th Cir. 2003) (a debtor-in-possession's counsel does not have a fiduciary duty to a particular creditor).

If the attorney and client disagree, counsel must refrain from filing bad faith or frivolous pleadings and ultimately withdraw if the high standard for withdrawal is met. *Everett v. Perez (In re Perez),* 30 F.3d 1209, 1219 (9th Cir.1994) (attorney for an individual the chapter 11 debtor proposed three deficient plans of reorganization that the court viewed as beneficial to the debtor, but not necessarily to the estate or in conformance with the attorney's fiduciary responsibilities).

In *Perez,* the Ninth Circuit explained:

> Counsel for the estate must keep firmly in mind that his client is the estate and not the debtor individually. Counsel has an independent responsibility to determine whether a proposed course of action is likely to benefit the estate or will merely cause delay or produce some other procedural advantage to the debtor. While he must always take his directions from his client, where counsel for the estate develops material doubts about whether a proposed course of action in fact serves the estate's interests, he must seek to persuade his client to take a different course or, failing that, resign. Under no circumstances, however, may the lawyer for a bankruptcy estate pursue a course of action, unless he has determined in good faith and as an exercise of his professional judgment that the course complies with the Bankruptcy Code and serves the best interests of the estate.

> We make no finding of wrongdoing here. We simply remind counsel that his responsibility is to help lead the estate on a just, speedy, inexpensive and lawful path out of bankruptcy. Faliure to live up to this responsibility may result in a reduction in allowable fees and other sanctions.

*Id.*

UNITED STATES TRUSTEE'S MOTION FOR DISGORGEMENT
OF ATTORNEY'S FEES - 23

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

Here, clear and convincing evidence demonstrates that Lasher violated its fiduciary duty to the estate and creditors, and actively assisted the Debtor in violating his same duty, by orchestrating and executing a scheme to deprive the estate of some $2.2 million. In the course of implementing the scheme, Lasher filed at least one false and misleading pleading and concealed material information from the Court and from creditors solely to benefit the Debtor and to the detriment of the estate and creditors. Under these circumstances the United States Trustee asserts that disgorgement of all fees received by Lasher for services during the Case is an appropriate remedy.

### III.    CONCLUSION

Lasher and its attorneys' behavior in this case, as described herein, represents a contemptible disregard for this Court, for the standards imposed by the Bankruptcy Code, and for the basic ethical rules and responsibilities incumbent upon all attorneys as officers of the Court. The disgorgement requested in the Motion is appropriate under the circumstances, and designed uphold the integrity of the Court and deter Lasher and its attorneys from future similar behavior. The United States Trustee respectfully requests that the Motion be granted, and that the Court order:

1.    Disgorgement of all fees paid to Lasher for services in the Case, with payment into the registry of the Court pending further order; and

2.    Any such other and further relief as the Court deems appropriate.

Dated: June 24, 2016.

Respectfully submitted,

Gail Brehm Geiger
Acting U.S. Trustee for Region 18

  /s/ Martin L. Smith
Martin L. Smith, WSBA #24861
Attorney for United States Trustee

UNITED STATES TRUSTEE'S MOTION FOR DISGORGEMENT
OF ATTORNEY'S FEES - 24

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

Case 10-14407-MLB    Doc 450    Filed 06/24/16    Ent. 06/24/16 10:26:39    Pg. 24 of 24